UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────────

PAULA LEONARD, on behalf of A.J.,

                  Plaintiff,

        V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

              Defendant.

─────────────────────────────────────────

**REPORT AND
RECOMMENDATION**

09-CV-029
(TJM/VEB)

## I. INTRODUCTION

In June of 2004, Plaintiff Paula Leonard filed an application for Supplemental Security Income ("SSI") benefits under the Social Security Act on behalf of her son, A.J. ("Claimant"),[1] alleging disability due to various psychological and behavioral impairments, including Attention Deficit Hyperactivity Disorder ("ADHD"). The Commissioner of Social Security denied the application.

Plaintiff, through her attorneys, Legal Aid Society of Northeast New York, Shubh Nigam McTague, Esq., of counsel, commenced this action by filing a Complaint in the United States District Court for the Northern District of New York. Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Norman A. Mordue, Chief United States District Judge, referred this

─────────────────

[1]A.J. is a minor child. Thus, in accordance with Rule 5.2 (a) of the Federal Rules of Civil Procedure, he will be referred to as "Claimant" in this Report and Recommendation.

case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 16).

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff is the mother of Claimant, a minor child.  On June 28, 2004, Plaintiff filed an application for SSI benefits on Claimant's behalf, alleging disability beginning on August 1, 1997. (T at 59-61).[2]  The application was denied initially.  Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ").  A hearing was scheduled, but Plaintiff failed to appear and the hearing request was dismissed. (T at 48-49).  The case was re-opened for good cause upon the request of Plaintiff's representative.  (T at 48-50). On March 27, 2008, a hearing was held in Albany, New York before ALJ Carl E. Stephan. (T at 554).  Plaintiff and Claimant appeared at the hearing with their attorney. Plaintiff, Claimant, and a third party (Frank Ruzzo) testified. (T at 554-75).

On April 11, 2008, ALJ Stephan issued a written decision denying the application for benefits and finding that Claimant was not disabled within the meaning of the Social Security Act.  (T at 12-30).   The ALJ's decision became the Commissioner's final decision on November 17, 2008, when the Appeals Council denied Plaintiff's request for review.  (T at 2-4).

On January 9, 2009, Plaintiff, acting on Claimant's behalf, timely commenced this action by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  The Commissioner interposed an Answer on April 9, 2009.

---

[2]Citations to "T" refer to the Administrative Transcript.  (Docket No. 10)

(Docket No. 8).  Plaintiff filed a supporting Brief on May 26, 2009.  (Docket No. 13).  The Commissioner filed a Brief in opposition on July 10, 2009. (Docket No. 14).

Pursuant to General Order No. 18, as issued by the Chief District Judge of the Northern District of New York, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

For the reasons set forth below, this Court recommends that the Commissioner's motion be denied, Plaintiff's motion be granted, and this case be remanded for the calculation of benefits.

### III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

4

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; Kittles v. Barnhart, 245 F.Supp.2d 479, 487-88 (E.D.N.Y.2003); Ramos v. Barnhart, 02 Civ.3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. 20 C .F.R. § 416.924(b); Kittles, 245 F.Supp.2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the test requires an examination as to whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c); Kittles, 245 F.Supp.2d at 488; Ramos, 2003 WL 21032012, at *7.

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether the impairment meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). Id. Equivalence to a listing can be either medical or functional. 20 C.F.R. § 416.924(d); Kittles, 245 F.Supp.2d at 488; Ramos, 2003 WL 21032012, at *7. If an impairment is found to meet or qualify as medically or functionally equivalent to a listed disability, and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1); Ramos, 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a claimant functions in six main areas, commonly referred to as "domains." 20 C.F.R. § 416.926a(b)(1); Ramos, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); Ramos, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I) (emphasis added).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); Ramos, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

6

**B.     Analysis**

**1.     Commissioner's Decision**

The ALJ noted that Claimant was born on December 3, 1994, and was therefore a "school-age child," as defined pursuant to 20 CFR § 416.926a(g)(2), on June 28, 2004 (the date the application for benefits was filed) and an adolescent as of April 11, 2008 (the date of the ALJ's decision).  The ALJ found that Claimant had not engaged in substantial gainful activity at any time relevant to the decision. He further determined that Claimant had generalized anxiety disorder, dysthymic disorder, learning disability, borderline intellectual functioning, and attention deficit hyperactivity disorder ("ADHD"), which the ALJ recognized as a "severe" combination of impairments under the Social Security Act. (T at 18).

The ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix I (the "Listings").  (T at 19).  The ALJ also concluded that Claimant did not have an impairment or combination of impairments that functionally equaled one or more of the impairments set forth in the Listings. (T at 203).

As to the six domains of function: the ALJ determined that Claimant had: (1) marked limitations in acquiring and using information; (2) less than marked limitation with regard to attending to and completing tasks; (3) less than marked limitation with respect to interacting with and relating to others; (4) no limitation in moving about and manipulating objects; (5) no limitation in the ability to care for herself; and (6) less than marked limitation with regard to health and physical well-being. (T at 24-29).

As such, the ALJ found that Claimant had not been disabled, as defined under the

Social Security Act, from the date the application for benefits was filed to the date of the ALJ's decision.  (T at 30).  As noted above, the ALJ's decision became the Commissioner's final decision on November 17, 2008, when the Appeals Council denied Plaintiff's request for review.  (T at 2-4).

### 2.    Plaintiff's Arguments

Plaintiff contends that the Commissioner's decision should be reversed.  In support of this position, she offers two (2) principal arguments.  First, Plaintiff challenges the ALJ's functional equivalence assessment on the basis that it was not rendered in accordance with applicable law.   Second, Plaintiff argues that the ALJ did not properly evaluate the credibility of the hearing witnesses.  Because this Court finds that Plaintiff is clearly entitled to judgment based upon the first argument, it is not necessary to review the ALJ's credibility assessment.  For the reasons set forth below, this Court finds that the evidentiary record clearly establishes marked (if not extreme) impairments in at least two domains and, accordingly, a remand for calculation of benefits is recommended.

As outlined above, if the claimant's impairments do not meet or medically equal one of the impairments set forth in the Listings, the Commissioner must still determine whether the impairment or combination of impairments are functionally equivalent to a Listing.  Analysis of functionality is informed by consideration of how a claimant functions in six (6) main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1).

In the present case, the ALJ determined that Claimant had: (1) marked limitations in acquiring and using information; (2) less than marked limitation with regard to attending to and completing tasks; (3) less than marked limitation with respect to interacting and relating to others; (4) no limitation in moving about and manipulating objects; (5) no

8

limitation in the ability to care for himself; and (6) less than marked limitation with regard to health and physical well-being. (T at 24-29).

Plaintiff does not challenge the ALJ's findings with respect to the domains of moving about and manipulating objects and health and physical well being. (Docket No. 14, at p. 6). However, Plaintiff argues that the ALJ erred with regard to the domains of attending to and completing tasks, interacting and relating to others, and caring for oneself.

### a.    Attending to and Completing Tasks

In this domain, the Commissioner considers the claimant child's ability "to focus and maintain . . . attention," and how well he or she can "begin, carry through, and finish . . . activities, including the pace at which [he] perform[s] activities and the ease with which [he] change[s] them." 20 C.F.R. § 416.926a(h).

A school-age child is expected to focus attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and homework assignments. The child should be able to concentrate on details and not make careless mistakes in work (beyond what would be expected in other children of like age who do not have impairments). The child should be able to change activities or routines without distracting himself/herself or others, and stay on task and in place when appropriate. The child should be able to sustain attention well enough to participate in group sports, read independently, and complete family chores. The child should also be able to complete a transition task (*e.g.*, be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation. 20 C.F.R. §416.926a (h)(2)(iv).

An adolescent should be able to pay attention to increasingly longer presentations

and discussions, maintain concentration while reading textbooks, and independently plan and complete long-range academic projects. The adolescent should also be able to organize materials and to plan his or her time in order to complete school tasks and assignments. In anticipation of entering the workplace, the adolescent should be able to maintain attention on a task for extended periods of time, and not be unduly distracted by peers or unduly distracting to them in a school or work setting. 20 C.F.R. §416.926a (h)(2)(v).

The Regulations provide examples of limited functioning with respect to this domain. For example, a claimant might have limited functioning if he or she is easily startled, distracted, or overreactive to sounds, sights, movements, or touch; slow to focus on, or fails to complete activities of interest; repeatedly becomes sidetracked from activities or frequently interrupts others; becomes easily frustrated and gives up on tasks; and requires extra supervision to remain engaged in an activity. 20 C.F.R. §416.926a (h)(3).

The ALJ found that Claimant had a less than marked limitation with regard to this domain. (T at 25).  In support of this conclusion, the ALJ referenced an intelligence evaluation performed by Annette Payne, Ph.D., a consultative examiner, in which Dr. Payne noted that Claimant demonstrated "relative strengths with his working memory" and "showed strengths with processing speed." (T at 217).  The ALJ noted that Claimant's fifth grade teacher found no problem with respect to Claimant's ability to sustain attention during play/sports activities and only a slight problem with regard to carrying out single-step and multi-step instructions and organizing his own things or school materials. (T at 227).  The ALJ also referenced reports from Claimant's sixth grade science, social studies, and special education teachers.  Claimant's science teacher indicated that Claimant only occasionally

10

exhibited problems with giving attention to detail, sustaining attention, following through on assignments, fidgeting, and intruding on others.  (T at 536).  Claimant's social studies teacher noted that Claimant showed no problems with respect to leaving his seat, running around, or blurting out answers. (T at 538).  Claimant's special education teacher indicated only occasional problems with losing things, becoming easily distracted, fidgeting, being "on the go," and blurting out answers. (T at 540).

The ALJ's decision is not remotely supported by substantial evidence.  In fact, the overwhelming evidence establishes that Claimant has a marked, if not extreme, limitation with regard to this domain.

The ALJ's reference to Dr. Payne's report is highly selective.  A fair and full reading of the report does not provide any material support for the ALJ's conclusion.   The consultative examiner's assessment clearly indicated marked limitations with respect to attending to and completing tasks.  For example, Dr. Payne described Claimant's "[m]otor behavior" as "restless." (T at 216).  Claimant "required repetition [of] instructions because of difficulties with attention and understanding." (T at 216).  Claimant was described as "markedly distressed" during the examination. (T at 217).  Dr. Payne opined that Claimant would have "difficulties attending to, following, and understand[ing] age-appropriate directions." (T at 217).  He would "have difficulties completing age-appropriate tasks." (T at 217).   Dr. Payne also conducted a psychiatric evaluation, in which she noted that Claimant's attention and concentration were "[i]mpaired due to emotionality" and that he had "problems with simple calculations and serial 3s."[3] (T at 210).

---

[3]"Serial 3s" involves counting by threes.

11

Claimant's fifth grade teacher indicated that Claimant had "serious" problems with regard to focusing long enough to finish assigned activities or tasks, refocusing to task when necessary, completing class/homework assignments, completing work accurately without careless mistakes, and working at a reasonable pace/finishing on time. (T at 227).

These limitations become even more significant when one considers that Claimant exhibited serious problems with attention and concentration even though he was being taught in a highly structured setting.  Claimant's fifth grade class was at a15:1:1 (fifteen students, one teacher, one paraprofessional) ratio. (T at 226).  The fact that Claimant demonstrated serious problems as to these skills even in a small group setting with significant structure and support is strongly suggestive of a marked limitation with respect to attention and concentration.

The ALJ appears to have given no weight to the impact of the structured setting on Claimant's functioning.   This is contrary to applicable law.  To wit, the "Commissioner's regulations require the ALJ to consider the effects of a structured or highly supportive setting . . . on the claimant's functioning and, if the claimant's symptoms or signs are controlled or reduced by the structured environment, the ALJ is required to consider the claimant's functioning outside of the highly structured setting." Smith v. Massanari, No. 00-CV-0402, 2002 WL 34242375, at *6 (W.D.N.Y. Mar. 17, 2002) (citing 20 C.F.R. § 416.924c);[4] see also Straw v. Apfel, No. 98 Civ. 5089, 2001 WL 406184, at *6 (S.D.N.Y.

---

[4]Section 416.924a (b)(5)(iv)(C) of the Social Security Regulations provides that:

A structured or supportive setting may minimize signs and symptoms of your impairment(s) and help to improve your functioning while you are in it, but your signs, symptoms, and functional limitations may worsen outside this type of setting. Therefore, we will consider your need for a structured setting and the degree of limitation in functioning you have or would have outside the structured setting. Even if you are able to function adequately in the structured or supportive

Apr. 20, 2001).

Claimant's sixth grade science teacher indicated that Claimant "often" had difficulty organizing tasks and activities, avoided/disliked/was reluctant to engage in tasks that required sustained mental effort, and was forgetful of daily activities. (T at 536).  He was "very often" distracted by extraneous stimuli. (T at 536).  Claimant's sixth grade social studies teacher opined that Claimant "very often" had difficulty sustaining attention to tasks or activities. (T at 538).  Claimant's sixth grade special education teacher assessed that he "very often" did not seem to listen when spoken to directly, did not follow through when given directions and failed to finish activities, and left his seat when remaining seated was expected. (T at 540).  Once again, these findings become even more significant when consideration is given to the fact that Claimant was receiving intensive support from his special education teacher and paraprofessional. (T at 539).

For seventh grade, Claimant was taught in an even more restrictive setting, a classroom with an 8:1:2 ratio. (T at 285).  Claimant's seventh grade special education teacher noted "very serious problems" on a "daily" basis with regard to numerous activities, including: paying attention when spoken to directly, focusing long enough to finish assigned activity or task, carrying out single-step instructions, and working without distracting himself or others. (T at 287).  The teacher explained that Claimant was "unable to complete a task on his own due to his behaviors." (T at 287).  The ALJ noted the seventh grade teacher's assessment in passing (T at 26), but made no effort to reconcile these highly significant

---

setting, we must consider how you function in other settings and whether you would continue to function at an adequate level without the structured or supportive setting.

findings with his conclusion that Claimant had less than a marked limitation with regard to this domain.

For the foregoing reasons, this Court has no difficulty whatever concluding that the ALJ's finding as to this domain was not supported by substantial evidence.  The record clearly demonstrates a marked, if not extreme, limitation with regard to the domain of attending to and completing tasks.  On that basis, given the ALJ's unchallenged conclusion that Claimant had a marked limitation with respect to acquiring and using information, a remand for calculation of benefits is recommended.  Nevertheless, out of an abundance of caution, this Court will proceed with discussion and analysis of the remaining domains of function.

**b.    Interacting and Relating with Others**

In this domain, the Commissioner considers the claimant's ability to "initiate and sustain emotional connections with others, develop and use the language of [his or her] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i).

A school-age child is expected to develop more lasting friendships with children who are his or her own age. The child should begin to understand how to work in groups to create projects and solve problems. The child should demonstrate an increasing ability to understand another's point of view and to tolerate differences. The child should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand. 20 C.F.R. § 416.926a(i)(2)(iv).

An adolescent  should be able to initiate and develop friendships with children who are his or her own age and to relate appropriately to other children and adults, both

individually and in groups. The adolescent should begin to be able to solve conflicts between himself/herself and peers or family members or adults outside his or her family. The adolescent should recognize that there are different social rules for friends and for acquaintances or adults. He or she should be able to intelligibly express feelings, ask for assistance in getting needs met, seek information, describe events, and tell stories, in all kinds of environments (e.g., home, classroom, sports, extra-curricular activities, or part-time job), and with all types of people (e.g., parents, siblings, friends, classmates, teachers, employers, and strangers). 20 C.F.R. § 416.926a(i)(2)(v).

Example of limitation functioning in this domain are: lack of close friends, avoidance or withdrawal, overanxiousness or fear of meeting new people or trying new experiences, difficulty playing games or sports with rules, and difficulty communicating with others. 20 C.F.R. § 416.926a(i)(3).

In this case, the ALJ concluded that Claimant had a less than marked limitation with regard to this domain. The ALJ referenced the following evidence in support of this finding: Claimant's 2005-2006 Individualized Education Program ("IEP") indicated that he could be a "happy and friendly boy who is extremely cooperative." (T at 236). He assisted kindergartners during their lunch period as part of a school program and enjoyed working with younger students. (T at 236). Although he exhibited behaviors that indicated frustration or anger, "more often than not he doesn't act on these feelings" and had "developed strategies to calm himself without adult intervention." (T at 236). Claimant's fifth grade report card for "period two" indicated that his behavior had improved significantly and that he was an active participant in the class. (T at 376). The ALJ noted that Claimant received average to low-average scores with regard to socialization and communication

on the Vineland Adaptive Behavior Scale. (T at 27). Claimant's 2007 IEP indicated that he could "sometimes be completely respectful, kind, very cooperative and soft spoken." (T at 313).

The ALJ's conclusion cannot be sustained. The evidence clearly (and tragically) shows that while Claimant certainly has the potential for meaningful social interaction and occasionally displays that potential, he consistently exhibited marked (if not extreme) limitations in this domain.

The ALJ's citation of the 2007 IEP is illustrative of his "pick and choose" approach with regard to the evidence. The IEP does state that Claimant can "*sometimes* be completely respectful, kind, very cooperative and soft spoken." (T at 313)(emphasis added). However, the balance of the assessment makes it clear that Claimant's overall social development was severally impaired. The following quotes are illustrative: "[Claimant] has displayed a pattern of verbally abusive language towards adults and several (6-8) aggressive episodes . . ., where he has thrown books across the room, tipped desks over, kicked chairs over, punched lockers, and ripped papers off the wall." (T at 313). Behavior modification plans had been implemented but had "not been effective in deterring [Claimant] from displaying violent episodes." (T at 313). "Asking [Claimant] to sit down until the bell has rung, or put your last name on your paper, is usually enough to send [him] into a rage." (T at 313). Although Claimant used self-calming strategies on an occasional basis, he had "shown increasing aggressive behaviors." (T at 313). Thus, it is difficult to understand how the ALJ could possibly have though the 2007 IEP was supportive of his "less than marked limitation" finding. A full and fair reading of the IEP, along with the other evidence outlined below, leaves no doubt as to the marked (if not extreme) nature of

16

Claimant's limitations.

Claimant's fifth-grade teacher indicated that Claimant had a "very serious" problem expressing anger appropriately and introducing and maintaining relevant and appropriate topics of conversation. (T at 229). Claimant demonstrated a "serious" problem on a daily (and even hourly) basis with respect to following rules; relating experiences and telling stories; interpreting meaning of facial expressions, body language, hints, sarcasm; and using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation. (T at 229). As noted above, these limitations are more significant when consideration is given to the educational context, *i.e.* the fact that Claimant was attending school in a highly-structured 15:1:1 setting, yet still exhibited these serious and very serious limitations on a frequent basis.

Claimant's sixth grade special education teacher indicated that Claimant became aggressive when asked to perform simple tasks, was verbally aggressive, and mumbled threats to other students under his breath. (T at 540). His sixth grade social studies teacher stated that Claimant "very often" was angry or resentful and actively defied or refused to comply with adult's requests or rules. (T at 538). Claimant "often" bullied, threatened, or intimidated others. (T at 538).

Claimant's seventh grade teacher assessed "very serious" problems on an hourly basis with regard to numerous aspects of this domain, including playing cooperatively with other children; making and keeping friends; expressing anger appropriately; following rules; relating experiences and telling stories; using language appropriate to the situation and listener; interpreting meaning of facial expressions, body language, hints, sarcasm; and

using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation. (T at 288). The teacher opined that Claimant lacked "the correct social skills to interact with his peers" or "carry out an appropriate conversation." (T at 288). The ALJ referenced the seventh grade teacher's assessment (T at 27), but made no effort to reconcile her findings with his overall conclusion that Claimant had a less than marked limitation as to this domain.

Dr. Payne, the consultative examiner, found that Claimant would "have difficulties adequately maintaining appropriate social behavior and responding appropriately to changes in the environment" and would "have difficulties interacting adequately with peers and adults." (T at 211, 217).

Claimant was suspended from school multiple times for being verbally abusive and physically aggressive toward his teachers. (T at 288, 530-31). Claimant was noted to hit his peers. The school eventually contacted the police to address Claimant's behavior. (T at 258, 261).

In light of the above-reference evidence, this Court concludes that the ALJ's finding as to this domain was clearly not supported by substantial evidence. The record amply demonstrates a marked, if not extreme, limitation with regard to the domain of interacting with and relating to others.

### c.   Caring for Oneself

In this domain, the Commissioner considers the child's ability to "maintain a healthy emotional and physical state, including how well [he or she] gets physical and emotional wants and needs met in appropriate ways; copes with stress and changes in environment;

and whether the child can take care of his or her own health, possessions, and living area. 20 C.F.R. § 416.926a(k).

With regard to this domain, a school-age child is expected to be independent in most day-to-day activities (*e.g.*, dressing, bathing), although the child may still need to be reminded sometimes to do these routinely. The child should begin to recognize that he or she is competent in doing some activities and has difficulty with others. The child should begin to develop an understanding of right and wrong, and what is acceptable and unacceptable behavior. He or she should begin to demonstrate consistent control over behavior, and avoid behaviors that are unsafe or otherwise not beneficial. 20 C.F.R. § 416.926a(k)(2)(iv).

An adolescent should be able to feel more independent from others and should be increasingly independent in all day-to-day activities, should be able to express positive and negative feelings in an appropriate way, and begin to think seriously about future plans and what he or she will do when school is completed. 20 C.F.R. § 416.926a(k)(2)(v).

The Regulations provide examples of limited functioning with respect to this domain. For example, a child might have limited functioning if he or she continues to place non-nutritive or inedible objects in his or her mouth, often uses self-soothing activities showing developmental regression or has restrictive or stereotyped mannerisms, does not dress or bathe themself age appropriately; engages in self-injurious behavior or ignores safety rules, does not spontaneously pursue enjoyable activities or interests, and/or has a disturbance in eating or sleeping patterns.  20 C.F.R. §416.926a (k)(3).

The ALJ concluded that Claimant had a less than marked limitation as to this domain.  In support of this finding, the ALJ referenced Dr. Payne's psychiatric evaluation,

in which she indicated that Claimant was "reportedly . . . capable of his own self-care." (T at 211).   Dr. Payne noted that Claimant assisted with chores and ate and drank independently. (T at 211).   The ALJ also referenced the fact that Claimant received an average score in the daily living skills domain on the Vineland Adaptive Behavior Scale. (T at 29).

The ALJ's conclusion is not supported by substantial evidence.   Claimant's fifth grade teacher noted "very serious" problems on a daily basis with regard to handling frustration appropriately; responding appropriately to changes in mood; and using appropriate skills to meet daily demands of the school environment. (T at 231).   Claimant's seventh grade teacher indicated "very serious" problems on an hourly basis with regard to numerous aspects of this domain, including handling frustration appropriately, being patient when necessary, taking care of personal hygiene, using good judgment regarding personal safety and dangerous circumstances, responding appropriately to changes in mood, and using appropriate coping skills to meet daily demands of the school environment." (T at 290).   The teacher reported that Claimant pulled the school fire alarm and then denied it even though he had residue on his fingers. (T at 290).   Claimant uses a marker to write on himself and demonstrated "very poor" hygiene (*e.g.* dirty hands and clothes).   Claimant was unable to calm himself and frequently lied. (T at 290).

Again, the findings of Claimant's teachers become more significant when one considers that Claimant exhibited these extreme limitations even while in a highly-structured educational environment, with intensive behavioral supports. The ALJ noted the findings of Claimant's teachers (T at 29), but does not appear to have accounted for the structured setting and made no meaningful attempt to reconcile his finding with the

20

significant limitations assessed by Claimant's teachers.  This amounted to reversible error. See, e.g. Smith v. Massanari, No. 00-CV-0402C, 2002 WL 34242378, at *6 (W.D.N.Y. Mar. 17, 2002)("For these reasons, I find that the ALJ erred in failing to fully and properly consider the effects of Eric's structured educational placement on his overall functioning, as required by § 416.924c of the Commissioner's regulations. Therefore, the ALJ's decision was based on an erroneous application of the law, with the result that highly probative evidence relating to Eric's claim was improperly disregarded.")

As outlined above, this Court finds that the ALJ's conclusion that Claimant had a less than marked limitation with regard to the ability for care for himself is not supported by substantial evidence.

### 3.    Remand for Calculation of Benefits

In this Circuit, a court may remand solely for calculation of benefits when it finds there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision." Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir.2004) (quoting Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir.1999)); see also Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) (remand for calculation of benefits appropriate where record "compel[s] but one conclusion under the ... substantial evidence standard."); Parker v. Harris, 626 F.2d 225, 235 (2d Cir.1980) (remand solely for calculation of benefits appropriate where "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose").

This Court concludes that remand to the Commissioner for further proceedings would serve no productive purpose, would not produce findings contrary to this Court's conclusions, and would only cause further delay.  Accordingly, it is recommended that a

remand be ordered solely for the calculation of benefits.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's Motion for Judgment on the Pleadings be GRANTED, that the Commissioner's Motion for Judgment on the Pleadings be DENIED, that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner for calculation of benefits.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   November 2, 2011

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

November 2, 2011

Victor E. Bianchini
United States Magistrate Judge